IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,            )
                                     )
                Plaintiff,            )
                                     )
vs.                                  )   Case No. 97-CR-171-JHP
                                     )
JEFFREY DAN WILLIAMS,                )
                                     )
                Defendant.            )

# **ORDER**

Jeffrey Williams pleaded guilty in 1998 to federal drug and firearms violations. The record reveals Defendant has steadfastly attempted to withdraw his plea of guilty alleging his plea was coerced and based upon fabricated evidence and perjured testimony.

### **I. Procedural Background**

On November 6, 1997, the grand jury for the Northern District of Oklahoma returned a four Count Indictment. Defendant was charged with (1) one count of conspiracy to possess with intent to distribute methamphetamine, conspiracy to manufacture methamphetamine, and conspiracy to maintain various locations for manufacturing methamphetamine; (2) two counts of possession with intent to distribute methamphetamine; and (3) one count of knowingly carrying a firearm during drug trafficking. Defendant contends the Indictment was primarily based on two state court cases.

Specifically, Defendant alleges Counts 2, 3 and 4 involved the state court cases which supported the conspiracy charge in Count 1.[1]

Defendant pled not guilty, and filed three Motions to Suppress on December 15, 1997 (Dkt.#s 5, 6, & 18). A total of four Indictments were filed, the original and three Superseding Indictments (Dkt.#s 1, 9, 42 , & 140). Defendant plead not guilty to each Indictment. Defendant contends, however, that after pleading not guilty on May 18, 1998 (Dkt. # 144) to the Third Superseding Indictment, his counsel advised him "if he did not plead guilty, the government intended to file a Fourth Superseding Indictment, adding CCE and including Petitioner's little sister on the Indictment. Petitioner gave up and agreed to plead guilty." (Dkt.# 542 at 16). Defendant entered a guilty plea on May 21, 1998 and sentencing was set for September 15, 1998. (Dkt.# 144).

Subsequently, the Presentence Report ("PSR") was completed by the United States Probation Office of the Northern District of Oklahoma. Defendant filed objections to all of the enhancements, including the drug quantity calculation. On August 31, 1998, Defendant filed a Motion to Withdraw his plea (Dkt.# 233). This motion was denied by the Honorable H. Dale Cook on September 10, 1998

---

[1] Defendant asserts; "On March 12, 1997, Tulsa Police, Special Investigation Division (SID) officers John K. Gray and Harold Wells, with other officers, with no warrant and no probable cause, conducted an illegal search and seizure of Petitioner which resulted in State Case No. CF-1997-1314, that later became Count 2, of Petitioner's federal indictment.
  On July 11, 1997, a state preliminary hearing was held regarding the March 17, 1997, illegal arrest in Case No. CF-1997-1314, where Officer John K. Gray lied under oath, which is supported by the record, and Petitioner testified that officer John K. Gray lied.
  On July 22nd, 1997, just eleven days after the preliminary hearing, officers John K. Gray and Jeff Henderson, with other officers, including William Yelton, retaliated against Petitioner, and conducted a "second" warrantless search and seizure, with no probable cause, which resulted in State Case No. CF-1997-3590, that later became Counts 3 and 4 of Petitioner's federal indictment.
  On November 6, 1997, Petitioner's first federal indictment was filed charging four Counts. As stated above, Counts 2, 3 and 4 were from the two illegal searches and seizures conducted by the above referenced SID officers." (Defendant's motion at 2-3, Dkt.# 542).

and Defendant's sentencing was continued until November 19, 1998) (Dkt. # 239). On November 13, 1998, Defendant filed a Motion to Reconsider his Motion to Withdraw Guilty Plea (Dkt.# 276).

On November 19, 1998, Defendant appeared for sentencing. Counsel first reurged Defendant's Motion to Withdraw Guilty Plea. This motion was denied. Counsel next argued the drug quantity was incorrect. The Government presented the testimony of DEA Agent Leon Frances to support the drug quantity calculations. Agent Frances based his calculations on statements of informants, stating that one of the informants, Gregg Fillmore, stated Defendant was responsible for 385 ounces. During allocution, Defendant alleged the following:

Defendant: I apologize for being a burden, Your Honor, but the information that the government has gathered has all been based on co-defendants' testimony or witness testimony. At no time have I made a statement or a comment admitting to any of this except for entering a plea agreement that I didn't want to enter in the first place.

Gregg Fillmore, one of the witnesses, that the codefendant – or the government is saying is responsible for like 380 ounces, I've never met that person in my life. I don't even know who he is.

Now, the rest of those people I know them, but I have no idea who that person is. So how can this information be true or accurate when I've never met this man in my life (Sentencing Tr. at 21-22).

The Honorable H. Dale Cook denied Defendant's Motion to Withdraw Guilty Plea and sentenced Defendant to 360 months as to Counts 1, 2, and 3 and 60 months of consecutive imprisonment for Count 4. Judgment was entered on December 4, 1998 (Dkt. # 283).

Defendant filed a direct appeal 4 days later on December 8, 1998 (Dkt.# 286). The Tenth Circuit Court of Appeals denied the appeal and affirmed the decision of the District Court on January

25, 2000 (Dkt.# 335). Thereafter, Defendant filed a Petition for Certiorari which was denied on May 23, 2000 (Dkt.# 345).

On January 4, 2001, Defendant filed a Motion to Vacate pursuant to 28 U.S.C. § 2255 (Dkt.# 365). Defendant raised thirteen ineffective assistance of counsel claims, including several asserting counsel's failure to object to sentence enhancements that allegedly violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This Court denied relief and the Tenth Circuit Court of Appeals dismissed the appeal. *United States v. Williams*, 44 F.App'x 443 (10th Cir. 2002), *cert. denied*, 537 U.S. 1138 (2003) (Dkt. # 425). Thereafter, Defendant filed three additional motions which were construed by the Tenth Circuit as requests to file successive §2255 motions (Dkt.#s 432, 446 # 468), and Defendant was denied authorization to file them.

On March 5, 2009, this case was randomly reassigned to this Court for review.

On November 17, 2010, Defendant filed a "Combined Pro Se Request For Discovery, Request For Expansion of the Record, and for an Evidentiary Hearing" (Docket No. 514). In this motion Defendant claimed "that at least five of the Tulsa Police Officers who have either been indicted, pled guilty, or are awaiting trial, as a result of the grand jury corruption probe, were involved in the investigation of Petitioner's criminal case, and his arrests. These officers fabricated and manipulated the evidence, witnesses, and informants, resulting in Petitioner's unconstitutional indictment, guilty plea and unjust 35-year sentence." *(Defendant's Br. At 2-3).*[2] Defendant noted that if he "would have had proof of the officers corruption, at that time, he would have received a substantially lower

---

[2] Defendant identifies the following four officers as being involved in his case: (1) Officer John K. Gray; (2) Officer Harold Wells; (3) Officer Jeff Henderson; and (4) Officer William Yelton.

sentence. As it stands, Petitioner's conviction and sentence constitute a fundamental miscarriage of justice." *Id.*

Petitioner also again attacked the credibility of Greg Fillmore, one of the witnesses that DEA Agent Francis interviewed in determining the drug quantity attributable to Williams. Williams contends Officers Henderson, Wells and Gray used undue influence to persuade Gregg Fillmore to provide evidence to law enforcement. Specifically, Williams contends Gregg Fillmore was charged by Information in The District Court of Tulsa County, Oklahoma, on July 1, 1993, of Murder in the First Degree. Williams contends this charge was dismissed on April 14, 1994, in exchange for Williams cooperation as an informant. Williams contends the evidence supplied by Fillmore was fabricated and resulted in a gross exaggeration of the drug quantity attributable to him as additional relevant conduct at sentencing. In support of this motion, Williams included the following:

(1) District Court of Tulsa County, Oklahoma records establishing the charge filed against Gregg Fillmore for First Degree Murder, and the ultimate dismissal of that charge.

(2) A notarized statement from his sister, Susan Weatherman, claiming that she went to Fillmore's home, escorted by a Claremore police officer, and confronted Fillmmore. Ms. Weatherman stated she "informed Mr. Fillmore that [she] was in possession of statements from various persons indicating that he had provided information to police about Jeff Williams, [her] brother, that was not true. [She] informed him that [she] knew he was a false informant and that he didn't even know [her] brother." Fillmore could not identify Williams. Further, Ms. Weatherman asked Fillmore to sign a statement, and told him she "just needed him to tell the truth." She alleges when Fillmore read the statement "he became very agitated and cut us short. He said he would think

5

about it and let me know in a couple of days." Ms. Weatherman told Fillmore she would contact him through the Claremore Police Department.

After they left Fillmore's house, Ms. Weatherman states the officer told her "he felt like[Fillmore] might make the statement to keep me quiet about his wife's unsolved murder or that he might not for that very same reason because of consequences if he told ..." Ms. Weatherman states that when she contacted the Claremore Police Department, three days later, officers would not speak with her regarding Fillmore because they had received information that Fillmore was currently under witness protection with the United States Attorney's Office. Ms. Weatherman concluded that "[s]ince April 4, 2011 when [she] spoke to Gregg Fillmore [she] had received two threatening phone calls. They were on [her] cell phone which is not listed. She stated, "I do not know who it was either time or how they got my number but it was a male voice and the first call said "You need to keep your F...ing nose out of peoples' business if you know what's good for you and the second call was "You better watch your F...ing back."

(3) A notarized statement from a woman named Stephanie Stutsman-Dickens claiming that Fillmore stated in her presence that he did not know Williams and had provided information regarding drug quantities to prevent officers from pursuing him for the murder of his wife.

(4) A notarized letter from a woman named Aubrey Ferrell, claiming that Fillmore had asked her to introduce him to Jeff Williams. Ferrell also asserts that Fillmore had told her he was an informant for the Tulsa Police Department's Special Investigations Division.

(5) A notarized statement from a woman named Tara Moles, claiming that Fillmore tried to convince her to testify falsely at an unrelated murder trial, and told her "police wanted him to say that

6

because they could get the death penalty." Moles also alleged that Fillmore pressed her to introduce him to Williams.

Defendant cited *United States v. Bryant*, 892 F.2d 1466 (10th Cir. 1989) for the proposition that a "sentencing based on consideration of 'materially untrue' information is 'inconsistent with due process of law' ... defendant has a constitutional right to sentencing based on accurate information." *Id.* at 1471; *(Defendant's Br. at 3).* Defendant also cited *United States v. Sunhodes*, 831 F.2d 1537 (10th Cir. 1987), " [T]he Fifth Amendment Due Process Clause applies to sentencing proceedings ... Due process insures that a defendant will not be sentenced on the basis of misinformation of a constitutional magnitude ... we recognize a due process right to be sentenced only on information which is accurate." *Id.* at 1541-42; *(Defendant's Br. at 3).* Defendant asserted that in light of this newly discovered evidence he either would not have pled guilty and proceeded to trial, or he would have received a substantially lower sentence, [and] with a 15-year sentence, with good time, [he] would have completed his sentence about 2-years ago, with no halfway house." *(Defendant's Br. at 9).* This motion was deemed a successive petition and denied by the Tenth Circuit Court of Appeals on July 25, 2011, Case No. 11-5081 (Dkt. # 533).

Since the denial of Petitioner's motion at least one of the officers Petitioner contends was involved in his arrest has been convicted on eight of 53 counts. Count 45 in the Indictment charged Officer Jeff Henderson of violating the civil rights of an individual and the remaining counts involved instances of perjury related to Count 45. Further, the Court takes judicial notice that at least 42 persons have been freed from custody, had a felony case dismissed, a sentence modified, or a new trial granted in the aftermath of the Tulsa police corruption investigation.

On January 17, 2012, Defendant filed the instant Motion to Withdraw and Nullify Guilty Plea (Dkt.# 542). The Government filed a Response to said motion on February 1, 2012. In this motion Defendant sets forth new allegations of misconduct on the part of Tulsa police officers including specific allegations of fraud committed upon this court. *See supra n.* 1. Defendant requests that the instant motion be construed liberally, because pursuant to Tenth Circuit case law "a pro se litigant's pleadings are to construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). Although Defendant characterizes the instant motion as a Motion to Withdraw and Nullify Guilty Plea, the Court finds in the face of the current newly asserted allegations it is more properly and liberally construed as a motion asserted pursuant to Fed.R. Civ.P. 60(d)(3) alleging a fraud upon this Court.

## II. Fraud Upon the Court

### A. No Statute of Limitations for an Action Brought Pursuant to Fed.R.Civ.P. 60(d)(3)

Typically, motions to set aside judgments are subject to a one-year bar. Fed.R.Civ.P. 60(b)(3). If, however, a plaintiff alleges that a fraud was committed against the court, there is no such bar. Fed.R.Civ.P. 60(c)(1). Fed.R.Civ.P. 60(d)(3) states: "This rule does not limit a court's power to … set aside a judgment for fraud on the court." Rule 60(d)(3) thus allows claimants to escape Rule 60(c)(1)'s one-year statute of limitations imposed on 60(b)(3) motions for fraud, and allege fraud on the court regardless of the passage of time. *See Parkurst v. Pittsburgh Paints, Inc.*, 2010 WL 4069430, at 1 (10th Cir. Oct. 19, 2010); *Zurich v. North America*, 426 F.3d 1281, 1291 (10th Cir. 2005). Therefore, there is no statute of limitations for bringing a fraud upon the court claim. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944). As a circuit court has

8

explained, "a decision produced by fraud on the court is not in essence a decision at all and never becomes final." *Kenner v. Comm'r of Internal Revenue*, 387 F.2d 689, 691 (7th Cir. 1968).

## B. Inherent Authority of Court to Vacate Judgment Obtained Through Fraud Upon the Court

All courts have the inherent equitable power to vacate a judgment that has been obtained through the commission of fraud upon the court. *Universal Oil Prods. Co. v. Root Ref. Co.,* 328 U.S. 575, 580 (1946). Federal Rule of Civil Procedure 60(d) contains a savings clause that specifically provides for the continuing existence of this equitable power outside and independent of Fed.R.Civ.P. 60(b). *See generally* Charles Alan Wright *et al.*, Federal Practice and Procedure §2870 (2d ed. 1995). The provision of Rule 60(d) commonly known as the "savings clause" states: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., §1655, or to set aside a judgment for fraud upon the court."

"The fraud upon the court described in the savings clause is distinct from the fraud described in Rule 60(b)(3), the latter of which allows a court to relieve a party of a judgment upon the showing of fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party. However, [b]ecause of their very potency, inherent powers, must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)

Further, "the inherent power of a court to set aside its judgment if procured by fraud upon the court is not dependent on the filing of a motion by a party; the court may assert this power sua sponte." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) *citing* 11 Wright and Miller

§2865, at 380. Moreover, not only does this court possess the inherent authority to consider such fraud, the court "has a duty to consider whether there has been a fraud on the court, and if so, to order an appropriate remedy, whenever such fraud comes to the Court's attention." *In Re M.T.G., Inc.*, 366 B.R. 730, 754 (E.D. Mich. 2007) .

Therefore, while Rule 60(b) may allude to the existence of the court's power to set aside a decision when fraud has been perpetrated against it, that power exists independently of 60(b). As the Third Circuit has stated in describing a fraud on the court action: "Initially, we must be clear that we are not here reviewing a Rule 60(b) motion … It follows that an independent action alleging fraud upon the court is completely distinct from a motion under Rule 60(b)." *Herring v. United States*, 424 F.3d 384 (3d Cir. 2005)(*internal citations omitted*).

### C. A Claim Asserted Pursuant to Fed.R.Civ.P. 60 (d) does not Constitute a Successive §2255 Petition

Defendant challenges this court's judgment entered following his guilty plea alleging he has "new evidence" demonstrating this judgment was the product of fraud upon the court. The Government argues Defendant has previously filed several petitions with this court, yet has not sought authorization from the Tenth Circuit to file this *Hazel-Atlas* Action, as is required for successive §2255 motions. Thus, the Government argues this court does not have jurisdiction to consider this action. However, in *Burke v. Unites States*, 2005 WL 2850354 (E.D.Pa. 2005), the court noted, "Petitioner's motion seeks relief from judgment based on a fraud upon the court under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944), and as such, is not a second or successive 2255 motion." *See also, Calderon v. Thomas,* 523 U.S. 538, 553 (1998)*; U.S. v. McVeigh*, 2001 WL 619765 (10th Cir. 2001)(noting fraud on the court exception to the gatekeeping

requirements and affirmative limitations in §2255 applicable to successive motions); *Workman v. Bell*, 227 F.3d 331, 335 (6th Cir. 2000)(recognizing exception). The same rule applies in the instant case: because Defendant seeks relief based on a fraud upon the court claim, it is distinct from a habeas petition and is not governed by AEDPA.

Further, the court which is the subject of the fraud is the appropriate court to remedy the fraud. 322 U.S. at 247-250. "The inquiry as to whether a judgment should be set aside for fraud upon the court ... focuses not so much in terms of whether the alleged fraud prejudiced the opposing party, but more in terms of whether the alleged fraud harms the integrity of the judicial process." *Levander v. Prober*, 180 F.3d 1114, 1120 (10th Cir. 1999)(fraudulent evidence not only deceived the Levanders, but because the court relied on the corporation's depositions, the court itself was defiled by the perjury and a fraud was committed on the court as well). Accordingly, this court has jurisdiction to rule upon Defendant's *Hazel-Atlas* Action.

### D. Governing Principles of a Fraud on the Court Claim

Almost all of the principles that govern a claim of fraud on the court find their genesis in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) ("*Hazel-Atlas*"). In *Hazel-Atlas*, an attorney for Hartford wrote an article praising a Hartford product as an advance in the field, and arranged to have the article printed in a trade journal under the name of an ostensibly disinterested expert. *Id.* at 240. The Patent Office and the Third Circuit relied in part on this article in ruling in favor of Hartford in patent application and infringement cases. *Id* at 240-41. The Supreme Court found conclusive evidence that this article was used for fraudulent purposes, and in granting relief to Hazel-Atlas explained that "[f]rom the beginning there has existed … a rule of equity to the effect

that under certain circumstances, one of which is after-discovered fraud, relief will be granted against judgments regardless of the term of their entry." *Id.* at 244. The Court further noted that:

> This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office, but the Circuit Court of Appeals. Proof of the scheme, and of its complete success up to date, is conclusive.

*Id.* at 245-46 *(internal citation omitted).*

In *U.S. v. Herring*, 424 F.3d 384, 390 (2005), the court ruled that "the fraud on the court must constitute 'egregious misconduct' … such as bribery of a judge or jury or fabrication of evidence by counsel,' " *Id.* at 390 (citation omitted), and that "perjury by a witness is not enough to constitute fraud upon the court." *Id.* This is consistent with *Hazel-Atlas*, which noted that its facts presented "not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury." 322 U.S. at 245. Rather, the court found "a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals." *Id.*

Therefore, a fraud upon the court action must satisfy a very demanding standard to justify upsetting the finality of the challenged judgment. The Third Circuit has described the standard as follows:

> In order to meet the necessarily demanding standard for proof of fraud upon the court we conclude that there must be: (1) intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. We further conclude that a determination of fraud on the court may be justified only by "the most egregious mis- conduct directed to the court itself," and that it "must be supported by

12

clear, unequivocal and convincing evidence."

*Herring v. U.S,*. 424 F.3d at 386-87. (internal footnote and citation omitted); *see also, Robinson v. Aktiengesellschaft,* , 56 F.3d 1259, 1267 (10th Cir. 1995).

"The possibility of a witness testifying falsely is always a risk in our judicial process, but there are safeguards within the system to guard against such risks. That is why there is a powerful distinction between perjury to which an attorney is a party and that which no attorney is involved. We believe the better view to be that where the court or its officers are not involved, there is no fraud upon the court within the meaning of Rule 60(b). It is fraud upon the court for a lawyer to engage in a conspiracy to produce fabricated evidence. An attorney's loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court, and when he departs from that standard, he perpetrates a "fraud upon the court" within the savings clause of the rule governing relief from judgment or order." *Kupferman v. Consolidated Research and Mfg. Corp.*, 459 F.2d 1072 (2d Cir. 1972).

Therefore, fraud on the court has been narrowly interpreted as contemplated by Rule 60(d)(3): "Fraud on the court should … embrace only that species of fraud which does, or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct." *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993)(*internal quotation omitted*); *see also, Orient Mineral Co. V. Bank of China*, 2011 WL 971173 (10th Cir. March 21, 2011), *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1266- 1267(10th Cir. 1995); *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985). Relief under Rule 60(d)(3), therefore, is usually "reserved for circumstances in which, for

example, a judge or juror has been bribed, a bogus document is inserted in the record, or improper influence has been exerted upon the court or an attorney so that the integrity of the court and its ability to function is directly impinged." *Morawski v. United States, Dep't of Agric.*, 2010 WL 2663201, at 7 (E.D. Mich. July 2, 2002); see also, *Zurich v. Matrix Service, Inc*., 426 F.3d 1281, 1291 (10th Cir. 2005)( the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court).

### E. Burden of Proof

"Proof of fraud upon the court must be by clear and convincing evidence." *Thomas v. Parker*, 609 F.3d 1114, 1120 (10th Cir. 2010) *citing United States v. Buck,* 281 F.3d 1336, 1342 (10th Cir. 2002). "Moreover, the challenged behavior must substantially have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed to trial." *Thomas v. Parker*, 609 F.3d 1114, 1120 (10th Cir. 2010) *citing Zurich v. North America*, 426 F.3d at 1290. "Fraud on the court claims merit separate analysis not only because they are exempt from the one year time-period for filing claims under Rule 60(b)(3), but also because they are much more difficult to prove." *Zurich v. Matirx Service, Inc*., 426 F.3d 1281, 1291 (10th Cir. 2005).

### III. Factual Analysis of Defendant's Hazel-Atlas Action

Initially the court notes, Defendant's *Hazel-Atlas* action does properly attribute the fraud that is alleged to an officer of the court, as required by *Herring*, 424 U.S. at 386. While *Herring* did not specifically delineate the officials that fall within the officer of the court rubric, it did make clear that lawyers were included. *Id* at 390. "Overall, it seems that only individuals who are intimately

associated with the operation of the court qualify as officers of the court." *See also, Cammen v. United States*, 350 U.S. 399, 405 (1986).

Defendant alleges the federal prosecutor, and/or its agents, fabricated evidence and used perjured testimony to procure the search warrants, Indictment, and Superseding Indictments in the instant case. Defendant's definite and precise accusations meet *Herring's* requirement that Defendant must allege an officer of the court presented fabricated evidence.[3] These documents and the testimony were relied upon by this Court in both the acceptance of Defendant's guilty plea, as well as in sentencing Defendant.

**I.V. Conclusion**

As long ago as *Mooney v. Hologan*, 294 U.S. 103, 112 (1935), the United States Supreme Court made clear that deliberate deception of a court by the presentation of false evidence is incompatible with "rudimentary demands of justice." This was reaffirmed in *Pyle v. Kansas*, 317 U.S. 213 (1942). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Tampering

---

[3] The good or bad faith of the prosecution has no bearing on the due process inquiry. **"Whether the nondisclosure [ or the use of perjured testimony] was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor is the spokesperson for the Government. Since the investigating officers are part of the prosecution, the taint is no less if they, rather than the prosecution, are guilty of the nondisclosure**." *United States v. Buchanan*, 891 F.2d 1436, 1442 (10th Cir. 1989)(emphasis added). **The Supreme Court has also held that it is a violation of due process to convict a defendant based upon false evidence, and the Government is also responsible for false testimony – even if the prosecution is unaware of the falsity**. See, generally *Napue v. Illinois*, 360 U.S. 264 (1959); *Giglio v. United States*, 405 U.S. 150 (1972); and *Miller v. Pate*, 386 U.S. 1 (1967). The Court incorporates Dkt.# 82, *United States v. Adkinson*, 08-CR-167-JHP.

15

with the administration of justice in the manner indisputably alleged here involves far more than an injury to a single litigant. "It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." 322 U.S. at 246.

"The power to unearth such a fraud is the power to unearth it effectively. Accordingly a federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigation. But if the rights of the parties are to be adjudicated in such an investigation, the usual safeguards of adversary proceedings must be observed." *Id*. Therefore, Defendant shall be appointed counsel. The parties may engage in discovery for a period of sixty (60) days, subject to an agreed protective order if necessary.

*[signature]*
James H. Payne
United States District Judge
Northern District of Oklahoma